NIEHAUS ET AL., APPELLEES, *v.* HAVEN PARK WEST, INC., ET AL., APPELLANTS.

(No. C-800197—Decided May 6, 1981.)

*Mr. Arthur Church,* for appellees.
*Messrs. Higgs, Ritter & Armstrong* and *Mr. John B. Armstrong,* for appellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

On May 18, 1978, the plaintiffs-appellees filed a complaint seeking judgment on a note and mortgage executed by defendants-appellants, Haven Park West, Inc., Jacob Drexler and Anna Drexler.[1] Appellants filed an answer and counterclaim, asserting, *inter alia,* failure of consideration and misrepresentations with regard to zoning and the conveyance of an easement. On February 26, 1980, the trial court granted appellees' motion for summary judgment; and, it is from this judgment that appellants have brought the instant appeal.

On November 1, 1975, appellants Jacob and Anna Drexler purchased from the appellees all the stock in a mobile home park known as Haven Park West, Inc. (Haven Park), located in Crosby Township in western Hamilton County. The Drexlers signed a note, secured by a second mortgage on the property, providing for payments of $20,000 in January 1976 and $19,000 in January 1977. The final $19,000 not being paid as due, appellees brought the instant suit.

The single assignment of error in this appeal challenges the trial court's ruling which granted summary judgment for appellees. In their argument in support of the assignment of error appellants raise two principal issues: (1) that appellees allegedly made false representations regarding the zoning of the property which induced appellants to purchase the mobile home park; and (2) that appellees Raymond H. and Mary Niehaus failed to convey an easement across the Niehaus property which had been a part of the negotiated agreement. We will first consider the zoning issue.

When appellees began operation of Haven Park in 1973, Crosby Township had no zoning ordinance. At that time appellees secured a license from the state which approved the park for a capacity of 112 mobile home "pads." In November 1974, the Board of Trustees of Crosby

---

[1] The other named defendants remain in the case but are not a part of this appeal.

Township enacted a zoning ordinance which designated as residential the area in which Haven Park is located. Appellees subsequently filed an application for certification of Haven Park as a nonconforming use. Unresolved at the time of the sale to appellants, however, was the question of whether, as a nonconforming use, the park was limited to the approximately 40 pads in operation when the zoning ordinance was passed or whether the use could be expanded to the 112-pad capacity.

Appellants claim that they were led to believe that the zoning properly allowed for an expansion to 112 pads and that the purchase price reflected the possibility of achieving the maximum possible income from the property. They charge that the "work-up sheet" prepared by the real estate agent fostered this belief. The work-up sheet contained, *inter alia,* the following items:

"Non-conforming use. Crosby Township just established zoning regulations and no mobile home parks or trailer parks will be allowed in the future.
"* * *
"45 pads completed
"41 pads now rented
"Capacity 112 pads (approved by State of Ohio)."

Appellees, on the other hand, contend that these terms from the work-up sheet are not incorporated into the written contract between the parties. They point out that the only relevant representation made in the contract is found in paragraph 5(O):

"Haven Park West, Inc. is not * * * in violation of any statute, law, regulation, ordinance of any governmental agency which prevents it from conducting its business in Hamilton County, Ohio."

The contract also includes this paragraph:

"This Agreement and the Exhibits attached hereto * * * contain the entire agreement between the parties hereto * * * and supersede all prior arrangements or understandings between the parties hereto relating to the subject matter hereof."

Thus, appellees maintain, the contract is complete and unambiguous and its language cannot be varied or added to by the use of parol evidence such as the work-up sheet.

We believe that parol evidence is admissible to supplement the contract in the instant case where the allegations are that misrepresentations induced the appellants to enter into the contract. In 24 Ohio Jurisprudence 2d 639, Fraud and Deceit, Section 27, it is stated:

"* * * It is a general rule that where one party to a contract has been induced to enter into it through fraud, deceit, and misrepresentation of the other party as to material matters, the defrauded party does not become bound by its terms, notwithstanding the contract contains a provision that there are no agreements or statements binding upon the parties except those contained therein. Fraud which enters into the actual making of a contract cannot be excluded from the reach of the law by any formal phrase inserted in the contract itself. * * *" (Footnotes omitted.) See, also, *Sparhawk* v. *Gorham* (1956), 101 Ohio App. 362 [1 O.O.2d 305]; *Blaha* v. *Schwartz* (Cuyahoga C.P. 1977), 7 O.O.3d 234.

Therefore, it is proper to consider, on the motion for summary judgment, the work-up sheet and the depositions and affidavits filed with the motion with a view to ascertaining how the parties understood the zoning question.

James Booker, the Crosby Township zoning inspector, stated in an affidavit that, in late September 1975, he told appellee Arthur C. Church that the nonconforming use permit could be granted only for the existing number of mobile home sites.[2] Ronald Denicola, attorney

---

[2] Crosby Township continued to adhere to this position after the sale. Subsequently, the

for the township, stated in an affidavit that in 1975 he saw two zoning problems with Haven Park — the license (a problem shortly thereafter resolved) and the number of sites — and that, on September 19, 1975, he told appellee Church the township's position on *both* issues. The affidavit of John J. Frank, appellees' real estate agent, indicates that before he prepared the work-up sheet he, at Jacob Drexler's request, contacted Inspector Booker about the zoning; that Frank was told of the two problems and talked to Church about both of them; and, that, later, Church contacted Frank, indicating that the problems no longer existed and that he could so inform the buyers. Frank then prepared the work-up sheet, believing that the park was zoned to permit 112 pads. On the other hand, Arthur C. Church in an affidavit averred that, prior to the sale, the position of Crosby Township on the zoning expansion issue was not known to any of the sellers. Appellee Raymond Niehaus in his deposition stated that Frank did not bring the use-expansion problem to his attention and that he knew of no problem of expanding prior to closing. Appellant Jacob Drexler by affidavit stated that he was never informed of a problem of obtaining zoning for 112 sites, that he discussed with Frank the fact that 112 sites were approved and that he (Drexler) was unwilling to pay the asking price for a lesser number of sites. Finally, the record also contains the affidavit of Robert Worth, who was attorney for the Drexlers at the time of the sale. Worth stated that appellant Jacob Drexler admitted to Worth that Worth was not hired for purposes of checking the zoning and that Drexler had intended to do this task himself. The affidavit of attorney Donald Weber corroborates this conversation between Worth and Drexler, although Drexler in his deposition denied making such a statement.

In light of this extensive recitation from the record, clearly there exist genuine issues of material fact regarding the representations made by the appellees or their agent with regard to the nonconforming use. Therefore, as to this issue, summary judgment was improperly granted. Civ. R. 56(C). Although one question of fact relates to Drexler's purported carelessness in checking on the zoning himself, he is not thereby precluded from having a jury decide this issue as well as the other issues of fact. We have been unable to discover any Ohio case on this point. However, courts in several other jurisdictions which have considered a seller's misrepresentations concerning zoning have held that a purchaser is not prevented from bringing an action against the vendor by the fact that he failed to examine public records before the purchase. *Stallard* v. *Adams* (1950), 312 Ky. 532, 228 S.W. 2d 430; *LaCourse* v. *Kiesel* (1951), 366 Pa. 385, 77 A. 2d 877; *Rusch* v. *Wald* (1930), 202 Wis. 462, 232 N.W. 875; Annotation 39 A.L.R. 3d 362.[3]

The second issue raised in the assignment of error concerns the court's awarding summary judgment to the appellees on appellants' counterclaim for damages for failure of "one or more of the appellees [*i.e.*, Raymond H. Niehaus and Mary Niehaus]" to convey an easement across the Niehaus property for easier ingress and egress to the mobile home park. We believe that summary judgment on this issue was properly granted. R.C. 1335.05, the statute of frauds, provides in pertinent part:

"No action shall be brought whereby

Drexlers filed a declaratory judgment action against the township, which resulted in a judgment entitling Haven Park to expand to 112 sites.

[3] Appellees also contend that by making the $20,000 payment appellants waived their right to bring claims against appellees. We do not believe that paragraph no. 17 of the contract can be construed to effect such a result.

\* \* \* to charge a person \* \* \* upon a contract or sale of lands \* \* \* or interest in or concerning them \* \* \* unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.''

The record contains testimony that the parties intended to contract for an easement, that appellee Arthur Church prepared a document providing for an easement and that appellees Raymond and Mary Niehaus signed it, that no executed easement was received or recorded by appellants, and that the subject was not discussed at the closing for the sale of the park. An unsigned copy of the proposed easement is in the record. However, the record does not contain any written agreement, memorandum, or note signed by Mr. and Mrs. Niehaus in which they contracted to convey such an easement. Therefore, because appellants have not presented any written agreement upon which this portion of the cause of action can be based, the oral contract is barred by the statute of frauds. Appellants further contend that the doctrine of part performance takes the instant situation out of the statute of frauds. We conclude that this doctrine is not applicable in the instant case. The Supreme Court, in the syllabus of *Hodges* v. *Ettinger* (1934), 127 Ohio St. 460, held in pertinent part:

"The doctrine of part performance can be invoked, to take a case out of the statute of frauds in Ohio only in cases involving the sale or leasing of real estate, *wherein there has been a delivery of possession of the real estate in question,* and in settlements made upon consideration of marriage, followed by actual marriage. \* \* \*'' (Emphasis added.)

Although the record indicates that some preliminary and equivocal steps were taken with regard to conveying the easement, we find nothing which indicates such delivery of possession that would bring the matter within the doctrine of part performance.

We sustain the assignment of error in part and overrule it in part as herein indicated. Therefore we affirm that portion of the trial court's order which grants judgment to appellees on the issue of damages for nonconveyance of the easement. With regard to other issues in the case, we reverse the judgment of the trial court and remand the cause for further proceedings according to law.

*Judgment accordingly.*

BLACK, P.J., KEEFE and KLUSMEIER, JJ., concur.